# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

AMANDA NIETO YOUNG,

     Plaintiff,

v.                                       Civ. No. 19-220 GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Amanda Young's ("Plaintiff's") "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum" [ECF 21] ("Motion"). The Motion is fully briefed. *See* ECFs 25 (Commissioner's Response), 26 (Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I.   FACTUAL BACKGROUND

Plaintiff was born in 1982. Administrative Record ("AR") 28.[1] She received her GED in 2013. AR 317, 501. She has worked as a community college custodian, caregiver, stocker, and cashier. AR 401. In October 2015, she applied for social security disability benefits, claiming that she suffered from a disability that began in August 2015. AR 260-61. She alleged that her disability resulted from anxiety, post-traumatic stress disorder ("PTSD"), panic attacks, and depression. AR 316.

---

[1] The numerical citation to the AR corresponds to the black pagination located on the bottom right corner.

In March 2016, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that the conditions were "not severe enough to keep [her] from working." AR 197. In June 2017, upon Plaintiff's request for reconsideration, the SSA again denied her claims. AR 202-204. Plaintiff then requested a hearing, which was held in September 2017 before ALJ Cole Gerstner. AR 54, 205. In February 2018, the ALJ concluded that Plaintiff had not been under a disability. AR 29. In January 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. AR 1. Plaintiff then timely filed in this District a petition for relief.[2]

## II.  PLAINTIFF'S CLAIMS

Plaintiff first argues that the ALJ stumbled in his understanding and evaluation of her severe impairment of fibromyalgia. Mot. 7. Specifically, Plaintiff submits that the ALJ "improperly discredited her reported limitations because her gait and strength were normal." *Id*. Plaintiff's second contention concerns the weight the ALJ assigned the opinions of two mental health-related doctors. Mot. 13. Here, Plaintiff contends that the ALJ failed to sufficiently credit those opinions or to explain why he did not do so. *Id*. 14-15. Lastly, in an argument better paired with Plaintiff's first, she argues that the ALJ failed to properly consider the longitudinal record that she alleges supports her symptoms. *Id*. 17-19.

---

[2] The Court notes that Plaintiff filed a second administrative claim for benefits, this time alleging that she suffered from a disability that began the day after the ALJ issued his written decision. Mot. 3. This claim was approved at the initial level with an onset date of disability beginning February 15, 2018. *Id*. Plaintiff's claim before this Court therefore concerns only the narrow window between August 2015 and February 2018. *Id*.

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision[3] is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation

---

[3] Under 42 U.S.C. § 405(g), courts review the Commissioner's "final decision," which in this case is the ALJ's February 2018 decision.

omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

**B. Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears

the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[s]he is not presently engaged in substantial gainful activity," (2) that "[s]he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[4] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient RFC "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 6, 2015, the alleged onset date of her disability. AR 21.[5] At step two, the ALJ found that Plaintiff had the following "severe" impairments: fibromyalgia, degenerative joint disease of the right hip, anxiety, panic disorder, and post-traumatic stress disorder. *Id.* At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 21-23.

---

[4] If the claimant can show that she has a listed impairment, she will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

[5] The ALJ noted that Plaintiff actually performed work after the alleged disability onset date but found that the work did not rise to the level of substantial gainful activity. *Id.*

## B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[6] Here, the ALJ found that Plaintiff had the RFC to perform less than the full range of light work as defined by 20 C.F.R. § 404.1567(b). AR 23. Specifically, the ALJ found that Plaintiff:

> can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently and sit, stand, and walk for six hours, each, per eight-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. She can only occasionally work at unprotected heights and around moving mechanical parts. Mentally, the claimant is limited to simple, routine tasks and can use judgment for simple, work-related decisions. She can have occasional interaction with supervisors, coworkers, and the public. Changes in the work setting are limited to simple, work-related decisions.

AR 23. As described below, the ALJ also discussed the evidence and reasoning that led to this RFC finding.

### 1. Plaintiff's Allegations

The ALJ began by reviewing Plaintiff's allegation that the combination of her "depression, anxiety, [] posttraumatic [sic] stress disorder . . . dizziness, fibromyalgia, hip osteoarthritis, back pain, memory loss, sleep difficulty, social withdrawal, [and] panic attacks," coupled with "difficulty with sitting, standing, walking, bending, kneeling, squatting, climbing, reaching, memory, concentration, understanding, following instructions, finishing tasks, getting along with others, and performing activities of daily living" rendered her disabled. AR 24. The ALJ also reviewed Plaintiff's assertion that she "can only sit for twenty minutes, stand for ten minutes, and walk for five minutes, at a time, and relies on a caregiver and her husband for daily support." AR

---

[6] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

24.  As discussed below, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," which, according to the ALJ, demonstrated her "impairments [were] not as limiting as she alleges."  AR 24, 27.

### 2. *ALJ's Assessment*

#### a.  Medical Evidence

The ALJ observed that the medical evidence of fibromyalgia and degenerative joint disease of the right hip dated back to January 2015, when Plaintiff reported neck and back pain.  AR 24.  The ALJ noted that, at this initial examination, Plaintiff "had upper back tenderness but otherwise retained a normal gait, full strength of the extremities, and no signs of swelling."  *Id.*  (citing AR 436-37 (examination notes of Dr. Zachary Stengal, dated 1/21/15)).  In addition, at that same examination, Plaintiff complained of "depression and anxiety and underwent a change in antidepressant medication."  AR 25 (citing AR 434).  Then in May 2015, Plaintiff reported anxiety and panic attacks.  *Id.* (citing AR 440).

In response to these recent psychological developments, Plaintiff underwent an initial mental health consultation in July 2015.  *Id.*  The ALJ noted that, although Plaintiff reported "depression, irritability, hypersomnia, social withdrawal, decreased energy, poor concentration, anxiety, and panic attacks," the consultation revealed that "she demonstrated normal behavior, a cooperative attitude, full orientation, normal speech, normal mood and affect, organized and goal-directed thought, intact memory and concentration, and fair insight and judgment."  *Id.* (citing AR 485-88).  Plaintiff received a diagnosis of depression, anxiety, and panic disorder at this examination.  *Id.*  A few months later, during September and October 2015 follow-up appointments, Plaintiff exhibited "intact speech, attitude, mood, affect, thought, memory,

concentration, and orientation, [and] [h]er insight and judgment remained fair. *Id*. (citing AR 506, 509). Plaintiff rounded out 2015 with several mental examinations that "revealed a normal orientation, mood, affect, and ability to concentrate." *Id*. (citing 446-58).

Alongside her complaints about her mental health, Plaintiff raised additional physical complaints. Plaintiff continued to "complain[] of lower back and widespread joint pain" but "[d]espite having lumbar tenderness, extremity tenderness, and muscle aches, her gait, strength, sensation, and range of motion remained normal." AR 24 (citing AR 450-57 (examination notes of Dr. Stengal, dated 11/25/15 and 12/17/15)).

In 2016, Plaintiff continued to seek treatment for both her mental and physical limitations. Beginning with Plaintiff's mental limitations, the ALJ noted that Plaintiff, as she did in 2015, "again exhibited intact mood, affect, and concentration." AR 25 (citing AR 461, 533, 596). This trend continued in March 2016 when Plaintiff reported that she was "'doing pretty well' and demonstrated a calm attitude, normal speech, a good mood and affect, logical and organized thought, alertness, full orientation, and intact memory, insight, and judgment." *Id*. (quoting 650). And in July 2016, Plaintiff again reported that she was doing well. *Id*. (citing AR 647). Later in 2016, although, Plaintiff appeared to be "downtrodden" and "anxious," "her speech, though [sic], cognition, orientation, attention, concentration, memory, insight, and judgment remained unimpaired." *Id*. (citing AR 638-45).

Regarding the status of Plaintiff's physical limitations in 2016, little changed from the previous year. As the ALJ observed, Plaintiff continued to report constant back pain and tenderness, but "her gait and strength remained normal." AR 24 (citing AR 536-38). At an April 2016 examination, Plaintiff presented with normal gait and strength as well as "full range of motion." *Id*. (citing AR 554). In May 2016, Plaintiff was diagnosed with fibromyalgia,

osteoarthritis of the hips, and chronic back pain because, among other things, she exhibited sixteen positive trigger points and x-rays revealed mild to moderate degenerative joint disease in both hips. AR 24-25. (citing AR 607-18). Nonetheless, the ALJ noted that Plaintiff continued to retain "intact strength and sensation." *Id*. at 25. The ALJ pointed out that a June 2016 examination showed that Plaintiff again demonstrated normal strength and sensation. *Id*. (citing AR 596). In July 2016, Plaintiff began physical therapy where she reported "ten-out-of-ten pain" and for the first time "demonstrated impairments to her gait, strength, and movement." *Id*. (citing 567-84). At an examination in January 2017, although Plaintiff reported widespread pain, tenderness, and limited abduction movement of her arms, the ALJ noted that her strength remained intact. *Id*. (citing AR 712-14).

With respect to her mental limitations, Plaintiff in February 2017 reported "stability and compliance with her medication, without side effects." *Id*. (citing 636-37). She "exhibited normal behavior, speech, mood, affect, thought, orientation, attention, concentration, memory, insight, and judgment." *Id*. In 2017, Plaintiff also received "diagnoses of major depressive disorder, panic disorder, and posttraumatic [sic] stress disorder." AR 26 (citing 636-37).

b. <u>Opinions of Francisco Crespin, M.D., Zachary Stengal, M.D., and Rosemary Beck, M.D.</u>

Although the ALJ acknowledged that Dr. Crespin opined that Plaintiff had a "permanent, severe limitation to her ability to walk," he nonetheless granted that opinion "little weight" because it was given in the context of supporting Plaintiff's request for renewal of a disabled parking placard. AR 26 (citing AR 717). Likewise, the ALJ noted Dr. Stengal's opinion that Plaintiff could not "follow instructions, complete tasks, or interact with others," *id*. (citing AR 722-24), and Dr. Beck's opinion that Plaintiff "could not perform any job function due to flare-ups of her mental impairments." *Id*. (citing AR 728-29). Nevertheless, the ALJ granted these opinions little weight

because the two "assessments were given in pursuit of an FMLA [Family and Medical Leave Act] claim." *Id*. (citing AR 722-24, 728-29).

To further support his discounting of these three opinions, the ALJ explained that consideration of disabled parking placard requests and FMLA claims "utilize[s] different standards and therefore lack[s] relevancy to the current determination." *Id*. In addition, the ALJ emphasized that "Dr. Crespin's assessment is contradicted by the [Plaintiff's] *numerous* demonstrations of a normal gait and intact strength" and that "the opinions of Dr. Stengal and Dr. Beck are inconsistent with [Plaintiff's] *frequent* demonstrations of normal mental functioning, including intact behavior, orientation, speech, memory, concentration, attention, thought, insight, and judgment." *Id*. (emphasis added) (citations omitted).

### c. Other Evidence

The other evidence before the ALJ consisted of two state agency consultants' opinions, the Global Assessment of Functioning scores, and a third-party function report completed by Plaintiff's spouse. To begin, the ALJ granted great weight to the state agency psychological consultants' opinions, which found that Plaintiff "had moderate mental limitations but could understand, remember, and carry out simple instructions." AR 27 (citing AR 171-93). The ALJ reasoned that the findings were "consistent with [Plaintiff's] admissions of improvement with medication, as well as her *many* demonstrations of good mental functioning, including normal behavior, orientation, speech, memory, concentration, attention, thought, insight, and judgment." *Id*. (citations omitted). The ALJ, however, discounted the state agency consultants' concerning Plaintiff's *physical* limitations. *Id*. In doing so, the ALJ criticized the consultants' "inability to find any severe physical impairments" when "[e]vidence arising at the hearing level has clearly shown the presence of tenderness caused by fibromyalgia and degenerative joint disease, which

more than minimally impairs the [Plaintiff's] physical abilities." *Id.* (citations omitted).

The ALJ granted little weight to the Global Assessment of Functioning scores, which indicated "serious to moderate symptoms or impairment in social, occupational, or school functioning." AR 27 (citing AR 485-525). The ALJ reasoned that "the more restrictive scores contradict the [Plaintiff's] repeated demonstrations of normal mental functioning," and, among other things, only serve "as a snapshot into the [] mental abilities on any given day and are based largely upon [Plaintiff's] subjective reports of daily activities." *Id.* (citing AR *passim*)

Lastly, the ALJ granted little weight to the third-party function report completed by Plaintiff's spouse. The report's detailed limitations included "impaired ability to bend, climb, see, hear, speak, retain information, follow instructions, understand, finish tasks, get along with others, and maintain her activities of daily living." *Id.* (citing AR 344-52). The ALJ discounted this report because Plaintiff's spouse was "a partial witness with no medical expertise" and "his assessment is contradicted by [Plaintiff's] routine demonstrations of intact mental findings." *Id.* (citing AR *passim*).

### d.  Conclusion

As illustrated above, the ALJ gave little weight to the opinions of Drs. Crespin, Stengal, and Beck and great weight to opinions of the state agency psychological consultants insofar as they related to Plaintiff's mental capacity. AR 26-27. In addition, the ALJ granted little weight to Plaintiff's Global Assessment of Functioning scores and her husband's third-party function report. *Id.* Consequently, the ALJ concluded that the state agency psychological consultants'

opinions—as well as "the objective medical evidence and [] the claimant's reported activities of daily living, both of which contradict her allegations"—supported his RFC determination. AR 27.

## C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff—through the date last insured—was unable to perform her past relevant work as a custodian and stocker. AR 27-28. The ALJ supported this conclusion by relying on the vocational expert's classification of this work as "heavy in exertion and ranging from unskilled to semiskilled (SVP of two and four) in skill level (Dictionary of Occupational Titles classifications 381.687-014 and 299.367-014)." AR 27. At step five, however, the ALJ found that Plaintiff was able to successfully adjust "to other work that exists in significant numbers in the national economy." AR 29. In doing so, the ALJ considered the vocational expert's testimony that Plaintiff could perform the requirements of occupations such as marker, router, routing clerk, and document preparer. *Id.* Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act." *Id.*

## V. ANALYSIS

### A. The ALJ Did Not Err in Discounting Plaintiff's Reported Fibromyalgia Limitations

Plaintiff argues that the ALJ committed legal error by not giving more weight to Plaintiff's reported limitations from fibromyalgia and giving too much weight to Plaintiff's "numerous

demonstrations of normal gait and intact strength." *See* Mot. 2-12; AR 24-26.[7]  The Court disagrees.[8]

Plaintiff appears to assert that objective medical evidence cannot outweigh subjective complaints made by a claimant diagnosed with fibromyalgia. *See* Mot. 7-12.[9]  Instead of providing authority for this proposition, however, or specifying what additional limitations the RFC should have imposed, Plaintiff merely recites the minutiae of her medical record.  *See, e.g,* Mot. 7-10 ("Ms. Young reported back spasms" "reported one week of joint pain" "had 16 of 18 positive fibromyalgia tender points" etc.).[10]  Clearly, this Court must meticulously review the record, *Hamlin*, 365 F.3d at 1214, but here Plaintiff's contention appears to "amount to an argument that this court *should reweigh the evidence*, which [it] cannot do." *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing *Oldham*, 509 F.3d at 1257) (emphasis added).[11]  The Court is

---

[7] The ALJ also noted that, on many occasions, Plaintiff's range of motion remained normal and that her daily activities suggested an ability to perform light work.  AR 24-26.  Thus, Plaintiff's argument that the ALJ based his decision solely on her normal gait and strength is incorrect.

[8] To the extent Plaintiff's brief includes undeveloped arguments under this section (or any section), the Court will not address them.  This Court is in no position to guess at what Plaintiff might have specifically intended to further argue and thus declines to address potential—and as yet unidentified—arguments that perhaps stem from her gait-and-strength argument.  *See, e.g.,* D.N.M. LR-Civ 7.1(a) (requiring a motion to "state with particularity the grounds and the relief sought" (emphasis added)); *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("perfunctory complaints failing to frame and develop an issue are not sufficient" (internal quotation marks omitted)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (only considering issues "that have been adequately briefed for [the court's] review").  Furthermore, such an analysis is also unnecessary because, as discussed throughout, the ALJ committed no legal error in analyzing Plaintiff's fibromyalgia limitation and the RFC he crafted accommodated her fibromyalgia and was supported by substantial evidence.

[9] To the extent Plaintiff objects to the ALJ's symptom and severity analysis—i.e., whether the ALJ properly discounted Plaintiff's subjective complaints of pain (and her alleged mental limitations) in light of the other evidence—that issue is thoroughly discussed below in section V(C).

[10] Plaintiff cites several inapplicable cases from outside this circuit that discuss the initial test to determine whether fibromyalgia is a limitation.  But that issue is not before the Court because the ALJ found it to be a severe limitation.  In addition, Plaintiff fails to cite any authority that holds that "gait and strength" are improper variables in the RFC calculus.  Finally, "[a]s with any claim for disability benefits," the ALJ must consider the "objective" evidence—and may only find a disability if "sufficient objective evidence" exists.  Social Security Ruling ("SSR") 12-2P (Jul. 25, 2012).

[11] Also, contrary to one of Plaintiff's assertions and as described below in Section V(B)(2), the ALJ adequately addressed the longitudinal record.  A court "may not displace the agency's choice between two fairly conflicting

constrained to reviewing whether the ALJ erred as a matter of law in her treatment of Plaintiff's fibromyalgia. It is not the proper role of this Court to substitute its judgment for that of the ALJ. "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue,* 511 F.3d 1270, 1272 (10th Cir. 2008*)* (quoting *Casias v. Sec'y of Health & Human Servs*., 933 F.2d 799, 800 (10th Cir. 1991)). The Court's role is only to determine if the ALJ properly explained his assessment of the limitations associated with Plaintiff's fibromyalgia. Consequently, having discerned no error by the ALJ in doing so, the Court will deny this claim.

**B. The ALJ Properly Evaluated Treating Source Opinions**

Plaintiff argues that the ALJ "conflated the two-step treating source analysis in granting 'little weight' to treating source opinions, and only discussed one out of the six *Watkins* factors. In giving 'little weight' to the treating source opinions the ALJ indicated he did not give them controlling weight, but he did not follow the distinct two-step inquiry." Mot. 14. The Court disagrees for the reasons that follow.

*1. Legal Standard*

Unless an ALJ gives a treating physician's medical opinion "controlling weight," the ALJ must *consider* the following six factors when deciding what lesser weight to give to such an opinion: (1) the examining relationship between the medical source and the claimant, (2) the treatment relationship, including its length, nature, and extent as well as the frequency of examination, (3) the degree to which the medical source presents and explains evidence to support a medical opinion, (4) the consistency of the opinion with the record as a whole, (5) whether the

---

views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax,* 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

opinion is from a specialist and is about an issue related to the medical source's specialty, and (6) other factors that are brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), (c)(1)-(6).

In the Tenth Circuit, the ALJ is not required to "explicitly discuss" all six factors. *Oldham*, 509 F.3d at 1258 (finding no law "requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion" (citations omitted) ); *see also Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (clarifying that the "ALJ is not required to discuss 'every piece of evidence'" (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007))).

Under the regulations, the ALJ "[g]enerally . . . give[s] more weight to medical opinions from [a claimant's] treating source." 20 C.F.R. § 404.1527(c)(2). Furthermore, the ALJ is to give such an opinion "controlling weight" if it is (1) an opinion "on the issue(s) of the nature and severity of [a claimant's] impairment(s)," (2) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (3) "not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* Regardless, however, of the weight given to such an opinion, if "[t]he ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions," then "[n]othing more [is] required." *Oldham*, 509 F.3d at 1258 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to "give good reasons" for the weight given to such opinions).

### 2. *Analysis*

#### a. Drs. Stengal and Beck

Drs. Stengal and Beck completed FMLA forms for Plaintiff that detailed her mental health limitations. Plaintiff argues that the ALJ gave two invalid reasons for discounting these opinions, specifically (1) that the FMLA utilizes different standards and therefore lacks relevancy to the

current disability determination and (2) that Drs. Stengal and Beck's findings are inconsistent with Plaintiff's frequent demonstrations of relatively normal mental functioning. Mot. 15. Specifically, Plaintiff contends that the ALJ's discounting of the FMLA forms because they apply different governing standards is "worthless" because he is required to "consider all medical opinion evidence, regardless of its source." *Id.* (citing 20 C.F.R. § 404.1527(c)). Second, Plaintiff argues that the ALJ simply "glossed over" substantial evidence that contradicts his findings. *Id.*

Beginning with whether the ALJ's first reason was "worthless," the Tenth Circuit has held that "[d]isability determinations by other agencies . . . are not binding." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992) (citing 20 C.F.R. §§ 404.1504, 416.904). They are, however, entitled to some consideration, s*ee Mandrell v. Weinberger*, 511 F.2d 1102, 1103 (10th Cir. 1975), and are evidence that an ALJ must "consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262–63 (10th Cir. 2005) (citing *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered." (quotation omitted)); *see also* 20 C.F.R. § 416.912(b)(5) (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration). Here, the ALJ complied with these requirements.

In the instant case, the ALJ did not just stop after he determined that separate standards govern determinations as to whether an employee might be eligible for FMLA benefits. Instead, he proffered an additional reason: the opinions of Drs. Stengal and Beck were "inconsistent with the claimant's frequent demonstrations of normal mental functioning, including intact behavior, orientation, speech, memory, concentration, attention, thought, insight, and judgment." AR 26. This reason is specifically tied to a factor specified in 20 C.F.R. § 404.1527 and, in addition, the

ALJ cited specific record evidence to support this conclusion. *See* AR 26 (citing AR 423-84, 485-525, 529-49, 585-673). Moreover, and to address Plaintiff's contention that an ALJ cannot rely on just one § 404.1527 factor, an ALJ need not explicitly discuss all of the relevant factors as long as the findings are "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Guice v. Comm'r, SSA*, 785 F. App'x 565, 569 (10th Cir. 2019) (unpublished) (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)). Here, the ALJ gave specific reasons to explain why he granted "little weight" to these opinions. AR 26.[12] This Court finds no error in the ALJ's analysis.

### b. Dr. Crespin

In totality, Plaintiff's briefing regarding Dr. Crespin is as follows:

> Dr. Crespin signed a renewal application for a handicap parking placard in August 2017, after an office visit. He provided she has permanent severe walking limitations. As discussed above regarding the ALJ's evaluation of fibromyalgia, reliance on normal gait and intact strength to reject Ms. Young's physical limitations is flawed. The ALJ's basis for rejecting Dr. Crespin's finding is unsupported by the evidence.

Mot. 16-17 (internal quotations and citations omitted). But the Court believes that it is Plaintiff's representation of the ALJ's reasoning that is flawed. The ALJ actually opined that, in addition to "Dr. Crespin's assessment [being] contradicted by [Plaintiff's] numerous demonstrations of a normal gait and intact strength, because the "assessment was given in pursuit of a disabled parking placard" which "utilize[s] different standards" it therefore "lack[ed] relevancy to the current determination." AR 26.

---

[12] Plaintiff also argues that the ALJ erred because he did not explicitly state whether he was granting the three opinions controlling weight or not. *See* Mot. 12-13. This is simply not a basis for remand when, as here, the ALJ specified what weight he was assigning each opinion. See *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (declining to remand because the court could "tell from the decision that the ALJ declined to give controlling weight") (citing *Causey v. Barnhart*, 109 Fed. App'x 375, 378 (10th Cir. 2004)).

As with his treatment of the opinions of Drs. Stengal and Beck, the ALJ's decision to discount Dr. Crespin's opinion was legally sound. First, 20 C.F.R. § 404.1527(c)(4) directs an ALJ to consider whether an opinion is consistent with the record as a whole. Second, the Court questions whether merely checking boxes on a certificate of eligibility for a parking placard would even qualify as a medical opinion— and other courts are similarly skeptical. *See, e.g., Moore v. Colvin*, 2014 WL 5765665, at *3 (N.D. Okla. Nov. 5, 2014) (unpublished opinion) ("[t]he checking of a box on an application for a parking placard, standing alone, does not qualify as a medical opinion that the ALJ [is] required to discuss." (citing *Parmley v. Astrue*, 2008 WL 3850250 (E.D. Ky. Aug. 15, 2008)); *see Walker v. Colvin*, 2015 WL 1816589, at *11 (D. Colo. Apr. 20, 2015) (unpublished opinion) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (the "ordering of a disability placard adds nothing to a finding of disability here *because there is no evidence that the two have substantially similar requirements*") (emphasis added) (citation omitted)). It is clear to this Court that the ALJ considered Dr. Crespin's opinion and the context in which it was given. That the ALJ discounted the opinion and explained why he did so is all that was required. *See Oldham*, 509 F.3d at 1258 (the ALJ provided "good reasons in his decision for the weight he gave" and "[n]othing more [was] required.") (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) (requiring the ALJ to "give good reasons" for the weight given to such opinions).

## C. The ALJ Properly Weighed the Evidence of Plaintiff's Limitations

Plaintiff argues that the ALJ failed to "consider properly"—i.e., did not properly weigh— her (1) activities of daily living, (2) interactions and improvement with medications, (3) psychosocial supports, and (4) her hearing testimony. Mot. 17-18. Plaintiff submits that the ALJ

gave too little weight to her statements about her symptoms and too much weight to evidence that was "not entirely consistent" with these statements. *Id.*; AR 24, 26.

### 1. Legal Standard

In evaluating a claimant's subjective testimony, ALJs

> must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . [ALJs must] evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017). Alongside SSR 16-3p, the Code of Federal Regulations provides additional factors beyond the mere medical evidence in the record to assist an ALJ in determining whether a claimant's statements of her symptoms are credible. 20 C.F.R. § 404.1529(c) (2017). These "credibility factors" include:

> (i) a claimant's daily activities; (ii) the location, duration, frequency, and intensity of a claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of those symptoms; (vi) any measures taken to relieve the pain or other symptoms; and (vii) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* § 404.1529(c)(3); *see id.* § 416.929(c)(3); *see also* SSR 16-3p at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3).").

Where disabling pain is alleged, the Tenth Circuit has devised a framework for further analyzing a claimant's subjective testimony regarding pain. These factors, known as the *Luna* factors, require an ALJ to consider:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether,

considering all the evidence, both objective and subjective, the claimant's pain is in fact disabling.

*Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). When an ALJ evaluates a claimant's subjective testimony, no formal factor-by-factor review of the evidence is required. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," the credibility determination is to be considered adequately supported. *Id.*[13]

### 2. *Analysis*

#### a. The ALJ Properly Weighed Evidence of Plaintiff's Physical Limitations

The ALJ's analysis of Plaintiff's physical limitations was thorough, methodical, and supported by substantial evidence. He meticulously documented the medical evidence, which included every relevant assertion of pain that Plaintiff asserted was caused by either fibromyalgia or degenerative joint disease of the right hip. *See* AR 23-27. In doing so, the ALJ demonstrated that each assertion concerning symptoms and pain made by Plaintiff during the course of her treatment (and at the hearing) was at least somewhat contradicted by objective medical evidence. *See id.* at 6-12. In addition, in his summary of Plaintiff's symptoms and severity, the ALJ gave legitimate reasons for his assessment, each of which was linked to record evidence. *See* AR 25 ("During the period, the claimant often complained of widespread pain, especially in her back, hips, and extremities, with little help from medication, physical therapy, and injections. However, although examinations confirmed the presence of widespread tenderness and positive trigger points, they also revealed that the claimant's gait and strength usually remained intact."), 26 ("I

---

[13] In March 2016, SSR 96-7p was superseded by SSR 13-3p to "eliminat[e] the use of the term 'credibility'" and to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (quoting SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016)). "However, the factors to be considered under SSR 96-7p are the same as under SSR 13-3p." *Id.* Therefore, all cases that use the term "credibility" are still relevant to the analysis and will be relied on by this Court throughout.

also find that the claimant's activities of daily living contradict many of her allegations. The claimant has admitted that she could maintain her personal care, help her children get ready for school, prepare meals, vacuum, do the dishes, maintain the finances, watch television, exercise on a stationary bike or treadmill, leave the house regularly, drive a car (infrequently), go to the grocery store, and attend church services") ("For instance, the claimant alleged significant deficits to sitting, standing, and walking (Hearing Testimony), yet the objective record suggests that the claimant maintained a normal gait and had little disruption to her range of motion").

Despite this description, Plaintiff still asserts that the ALJ properly failed to consider her activities of daily living. See Mot. 10-12, 17. As just demonstrated, however, that is not the case. Further, Plaintiff does not explain how the ALJ mistreated this testimony nor how it should have impacted his determination. At bottom, Plaintiff attempts to have this Court reweigh evidence and makes accusations without any supporting arguments. Unfortunately, this Court cannot reweigh the evidence nor manufacture an argument that Plaintiff has not made. Ultimately, based on the available medical and nonmedical evidence, the ALJ reasoned that Plaintiff's pain was not disabling. The Court is mindful that "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir. 1995)).

b. <u>The ALJ Properly Weighed the Evidence of Plaintiff's Mental Limitations</u>

The same holds true regarding Plaintiff's mental limitations. Here, Plaintiff focuses on three areas where the ALJ allegedly erred: medication, psychosocial support, and hearing testimony. *See* Mot. 17-18. Beginning with Plaintiff's prescribed medication, she asserts that the ALJ erroneously noted that Plaintiff reported improvement and stability with medication. Plaintiff then lists off her medications, her reported side effects, and a corresponding date, all but three of

which date back to 2015.  But Plaintiff's summary is only a fraction of the full record.  While there are several instances where she reported no improvement or mild side effects, there are also several instances where she reported improvement or no side effects.  *See, e.g.,* AR 159, 164, 175, 188, 429, 436, 530, 646, 647.

Plaintiff next argues that the ALJ did not consider her psychosocial support, i.e., a caregiver that provides support 20 hours a week.[14]  Again, the record says otherwise, as the ALJ included in his written opinion that Plaintiff relies on a caregiver.  *See* AR 24.  In addition, the ALJ thoroughly questioned Plaintiff about her caregiver at the hearing.  *See* 59-66.  At this juncture, this Court will review only whether the ALJ properly considered the evidence in his severity analysis, as case law does not "require a formalistic factor-by-factor recitation of th[at] evidence."  *Qualls*, 206 F.3d at 1372.  Nor does the law permit the Court to reweigh the evidence.  The Court finds no error here.

Lastly, Plaintiff contends that the ALJ did not consider her hearing testimony.  The record again proves otherwise.  *See, e.g.,* AR 26 ("For instance, the [Plaintiff alleged significant deficits to sitting, standing, and walking (Hearing Testimony), yet the objective record suggests that the claimant maintained a normal gait and had little disruption to her range of motion."), *id* ("The [Plaintiff] has admitted that she could maintain her personal care, help her children get ready for school, prepare meals, vacuum, do the dishes, maintain the finances, watch television, exercise on a stationary bike or treadmill, leave the house regularly, drive a car (infrequently), go to the grocery store, and attend church services (Ex. SE, pgs. 3-6; Hearing Testimony).").  Although it is clear that Plaintiff disagrees with the manner in which the ALJ evaluated her testimony, it is equally clear that the ALJ performed that evaluation.  That task is committed to the purview of the ALJ, and mindful of its limited standard of review, the Court finds no fault with it.

---

[14] This paid caregiver is actually Plaintiff's live-in niece.  AR 62-63.

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***